## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### TAMPA DIVISION

**JOSEPH DALEO,**

      **Plaintiff,**

**v.**                               **Case No.  8:11-cv-2521-T-30TBM**

**MARK McCRAY, Deputy Sheriff,
et al.,**

      **Defendants.**

_____/

### ORDER

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Dkt. 28), Deposition of Shana Furney (Dkt. 29), Deposition of Joseph Daleo (Dkt. 30), and Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. 31).  The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes the motion for summary judgment should be granted in part and denied in part.

### BACKGROUND[1]

Plaintiff Joseph Daleo sues Defendants, Polk County Sheriff Deputies Mark McCray, Courtney Baldwin, Jason Asbury, and Kenneth Jackson, for a violation of his Fourth Amendment rights under 42 U.S.C. § 1983.

_____

[1]These facts are taken in a light most favorable to Plaintiff, the non-movant.

The action arises out of an incident that took place in September 2010.[2] The Deputies were investigating a hit-and-run accident that occurred earlier that evening in Daleo's neighborhood. The Deputies followed a trail of liquid on the pavement to Daleo's house where the trail disappeared into the closed garage.

The Deputies found Daleo outside his house walking his dog. They informed him they were investigating a hit-and-run accident. At some point during the exchange between Daleo and the Deputies, Daleo became upset and removed all his clothing. The record is undisputed that he was then arrested for indecent exposure. Daleo testified that he had been "arrested at that house about seven times from the same cops, all due to the neighbors next door, so I just didn't want them to go in the house." Dkt. 30, 29:21-24.

Shana Furney, Daleo's fiancé, was inside the house when the Deputies first arrived at the house. The Deputies knocked on the door and began questioning Furney about her knowledge of the accident and whether she lived at Daleo's house. Eventually Furney stepped outside to speak with the Deputies at which point Furney claims they read her Miranda warnings and told her she was under arrest. While outside speaking with the Deputies, Furney heard Daleo screaming at her that he did not want the Deputies to be allowed to search the house.

The record is disputed as to most of the remaining events of the evening. Furney testified that she informed the Deputies she did not live at the residence and did not have the

---

[2]The exact date is unclear. The second amended complaint alleges the incident occurred on September 28, 2010. However, defense counsel prefaces a question in Furney's deposition with the statement that the incident occured on September 5, 2010.

authority to let them search the house.  However, she admits that she allowed them to enter the foyer area.  Daleo admits he was no longer present when Furney allowed the Deputies inside the foyer.  After permitting the Deputies to step inside the front doorway, she testified that "I told them that you guys cannot - when he said we're already in here, you know, I said, you cannot search the premises, I don't have the authority to give you permission, you can't search the premises, and he just proceeded to walk into the garage through the little laundry room."[3]  Dkt. 29, 47:18-23.

The Deputies submitted the affidavit of Defendant Asbury which counters Furney's deposition.  Specifically, Asbury states that Furney informed the Deputies she lived at the residence, that the Deputies never told her she was under arrest, and that Furney gave the deputies permission to enter the residence.  Dkt. 28-1.

The Deputies did enter Daleo's home and proceeded through to the garage.  The car was damaged consistent with a vehicle being in a hit-and-run accident.  The Deputies reported seeing liquid leaking from the car.  However, Daleo and Furney were never charged in connection with the hit-and-run accident.

---

[3]Furney repeated her perceived inability to grant consent numerous times throughout the deposition.  For example:

> I told them, I said, Joe said, you know, you guys need a search warrant.  I'm like, I don't live here, I don't see how I can give you permission to search the premises, you know what I mean.  I said, I can't give you permission, it's not mine to give you, and that's when the one deputy was like, well, we're inside, so.

Dkt. 29, 47:7-12.

Daleo claims his Fourth Amendment rights were violated by the Deputies warrantless search of his garage.  The Deputies move for summary judgment solely on the issue of qualified immunity.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *Celotex,* 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990).  "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990).  However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

### A.    Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 229 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity "is an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

"Under the well-defined qualified immunity framework, a 'public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 1998)).  Here, Daleo admits that the Deputies

were acting within their discretionary authority when they were investigating the hit-and-run accident and searched his home.  Thus, the first prong is met.

The burden then shifts to the plaintiffs to meet the two-part standard recently affirmed by the Supreme Court.  *Terrell*, 668 F.3d at 1250.  Daleo must show (1) that there was a violation of the Constitution and (2) that the illegality of the Deputies' actions was clearly established at the time of the incident.  *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012).  The Supreme Court has stated that a court may assess these factors in any order.  *Pearson*, 555 U.S. at 236.

The Supreme Court has instructed that "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  "At its core, the question is one of fair notice: 'If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.'" *Terrell*, 668 F.3d at 1255 (quoting *Saucier*, 533 U.S. at 202).  The inquiry of whether a right is clearly established must be undertaken in the specific crucible of the case, not as a broad proposition.  *Hoyt*, 672 F.3d at 977.  This Court must look to the precedent of the Supreme Court of the United States, of the Eleventh Circuit, and of the Florida Supreme Court.  *See id.*

A plaintiff may demonstrate that a constitutional right is clearly established in three ways:

> First, the plaintiffs may show that a materially similar case has already been decided.  Second, the plaintiffs can point to a broader, clearly established

principle that should control the novel facts of the situation. Finally, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary.

*Terrell*, 668 F.3d at 1255 (internal citations omitted).

Daleo argues the Deputies violated the Fourth Amendment in four ways: (1) the Deputies exceeded the scope of Furney's consent; (2) any consent given by Furney was coerced; (3) Furney lacked apparent authority to consent; and (4) Daleo was removed from the scene for the purpose of avoiding his objection to the search.[4]

Daleo does not cite a single "materially similar case" decided by the Supreme Court, Eleventh Circuit, or the Florida Supreme Court. Nor does Daleo cite a case or point to a principle of law that would make the unlawfulness apparent in this situation. Not surprisingly, Daleo conclusorily relies upon the third prong as the basis for showing a clearly established constitutional right under the Fourth Amendment. Given Daleo's failure to point to cases that show a clearly established constitutional right was violated, the Court must explore the Fourth Amendment landscape to see if the Deputies are entitled to qualified immunity as to each issue.

**B.     Scope of Furney's Consent to Search**

"A warrantless entry into a suspect's home is presumed to be an unreasonable violation of the Fourth Amendment." *Holmes v. Kucynda*, 321 F.3d 1069, 1078 (11th Cir. 2003). "The prohibition [on a warrantless search] does not apply, however, to situations in

---

[4]Daleo does not divide his complaint or response into these four categories and his complaint appears to allege a single count. After reviewing the complaint and response to the motion for summary judgment, the Court concludes that these are the four general objections to the Deputies' actions on the date at issue.

which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness - what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). A court must consider the totality of circumstances when determining "whether there were any limitations placed on the consent given and whether the search conformed to those limitations." *See United States v. Rios*, 443 Fed. App'x 433, 437 (11th Cir. 2011) (quoting *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989)). "'When an individual gives a general statement of consent without express limitations,' the bounds of the search are 'constrained by the bounds of reasonableness' based on 'what the parties knew at the time to be the object of the search.'" *Rios*, 443 Fed. App'x at 798 (quoting *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992)).

However, it is black-letter law that consent to a search which waives Fourth Amendment rights can be limited, qualified, or withdrawn. *Mason v. Pulliam*, 557 F.2d 426, 428 (5th Cir. 1977);[5] *see Florida v. Jimeno*, 500 U.S. 248, 252 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents."). "When the basis for a search or seizure is consent, the government must conform to the limitations

---

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981.

placed upon the right granted to search, seize or retain the papers or effects." *Id.* at 429. Thus, when a citizen's consent contains no agreement about scope or duration, it is "implicitly limited by [the citizen's] right to withdraw his consent and reinvoke his Fourth Amendment rights." *Id.*

For example, in *United States v. Rios*, the Eleventh Circuit found that the officers did not exceed the scope of the defendant's consent because the only limitation placed on the search was the request not "to tear up the room, because [the defendant] was responsible for the [hotel] room." 443 Fed. App'x at 438. The officers did not damage the room when searching for drugs, thus abiding by the scope of consent. *Id.* When the officers requested to open a small safe, defendant withdrew his consent to search and told them to get a warrant. *Id.* at 437. The officers complied with defendant's withdrawal of consent and sought a warrant instead of continuing with the search. *Id.*

The Court concludes these principles of consent and withdrawal are clearly established so as to control the instant case and to give the Deputies fair notice of what is allowed in this context. As the Eleventh Circuit has emphasized, "the contours of [a constitutional] right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Holmes v. Kucynda*, 321 F.3d 1069, 1077-78 (11th Cir. 2003).

The Deputies frame the constitutional question as whether it is a clearly established constitutional violation for "a deputy, having been granted consent that was not limited in scope, to enter a house and then proceed into another part of the house."  Dkt. 28.  In response to the question of whether she allowed the Deputies to step inside the home, Furney admits, "Yes, yes.  I did tell them that they could – that they could stand inside the foyer, yes."  Dkt. 29, 45:9-10.

The problem is that the Deputies' rendition of the constitutional issue only includes half of the facts as testified by Furney in her deposition.  Notably absent from the Deputies' analysis is that Furney, after allowing them inside the foyer, claims she explicitly told the Deputies "you cannot search the premises, I don't have the authority to give you permission, you can't search the premises."  Dkt. 47, 47:19-21.  Regardless of whether Furney allowed them to enter the foyer, this statement clearly withdraws any consent given to search the rest of the residence.

The Deputies rest upon Defendant Asbury's statement that "[w]e asked Furney if we could enter the house, and she gave us permission to enter."  Dkt. 28-1, ¶ 8.  This statement does not rebut Furney's testimony that she withdrew any consent given to search the remainder of the residence after allowing them in the foyer.  Furthermore, even if it did directly contradict Furney, it is a disputed material fact that this Court cannot resolve on a motion for summary judgment.

As for the second requirement of the qualified immunity test, Daleo has put forth sufficient evidence that an actual constitutional violation occurred.  "The standard for

measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness - what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).  The interaction between Furney and the Deputies is a materially disputed fact, thus it is inappropriate for the Court to decide the issue because it is the jury's province to decide the credibility of Furney.  However, if Furney is believed, a reasonable person could not interpret the statement "you cannot search the premises" to mean consent to search the garage.

When viewing these facts in the light most favorable to Daleo, the Court concludes there is a dispute of material fact that it cannot resolve on a motion for summary judgment. Accordingly, the Deputies are not entitled to qualified immunity on the issue of whether they exceeded the scope of Furney's consent to search.

## C.     Voluntariness of Furney's Consent to Search

"Consent to a warrantless search is voluntary if it is 'the product of an essentially free and unconstrained choice.'" *United States v. Rios*, 443 Fed. App'x 433, 437 (11th Cir. 2011) (quoting *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989)).  In evaluating whether consent was freely given, a court should consider: "(1) the voluntariness of the defendant's custodial status, (2) the presence of coercive police procedure, (3) the extent and level of the defendant's cooperation with police, (4) the defendant's awareness of his right to refuse to consent to the search, (5) the defendant's education and intelligence, and (6) the defendant's belief that no incriminating evidence will be found."  *United States v. Francis*, 140 Fed.

App'x 184, 187 (11th Cir. 2005) (quoting *United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984)).  A determination that consent was voluntary is a finding of fact.  *Williams*, 199 Fed. App'x at 828 (citing *United States v. Dunn*, 345 F.3d 1285, 1288 (11th Cir. 2003)).

Based on the complaint's allegations and Furney's testimony, she was read her Miranda rights and told she was under arrest prior to the Deputies asking to search Daleo's home.  Daleo claims that the Deputies pretended to arrest Furney in order to coerce her into allowing them to search the home.  Defendant Asbury's affidavit states: "I never told Furney that she was under arrest, nor did the other defendants."  Furney does not claim she was physically restrained after being read her Miranda rights and she seemed to understand the right to refuse to consent because she repeatedly told the officers she did not have the authority to allow them to search Daleo's home.

Once again, Daleo fails to point to any controlling case law to show that the Deputies' violated Daleo's clearly established constitutional rights by asking Furney to consent to a search of the house after being told she was under arrest.  Ironically, Daleo has argued that Furney refused to consent, thus showing she was not coerced.

Unlike the scope of consent analysis, the issue of coercion is more fact specific because there are no bright-line principles to be applied.  For issues of coercion, a clearly established constitutional right would best be established by presenting a factually analogous case in the category of "judicial precedents [that] are tied to particularized facts." *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002).  Daleo neglected to identify any cases. Accordingly, the Court concludes Daleo has failed to show the Deputies violated a clearly

established constitutional right by asking Furney to consent after the alleged arrest. The Deputies are entitled to qualified immunity and summary judgment is granted as to the issue of the voluntariness of Furney's consent.

### D.   Apparent Authority of Furney

Daleo argues in his response to the motion for summary judgment that Furney lacked apparent authority to give consent based on her repeated statements that "I don't have the authority, I do not live here, this isn't my house." Dkt. 42, 42:6-7. The Deputies counter with Asbury's affidavit that claims "Furney told us that she had lived at Plaintiff's house for several months and considered it to be her residence," thereby supporting their claim that she had at least apparent authority to grant consent to search the home. Dkt. 28-1, ¶ 6.

Consent may be given by "the permission of a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant." *Geogia v. Randolph*, 547 U.S. 103, 109 (2006). The key inquiry is whether a fellow occupant shares common authority over property, such as joint access or control, not whether the occupant holds property rights in the residence. *Id.* at 110.

Here, Furney's statements do not address the key issue of shared common authority or joint access to the property. It is immaterial whether or not she believes herself to lack the authority to grant consent. Both Daleo and Furney testified that she frequently visited Daleo's home, left some clothing there, and occasionally spent the night.[6] She was inside

---

[6]These facts, along with her ability to freely access Daleo's home, reflect that Furney likely possessed actual authority to consent to the search. However, neither party argues this issue and the Court will not *sua sponte* address it.

the home when the Deputies arrived and they reasonably could believe, even with her protests stating the opposite, that she had apparent authority to allow the Deputies to enter Daleo's home.

Even viewing the facts in the light most favorable to Daleo, the Court concludes Daleo has failed to show the Deputies violated a clearly established right as to whether Furney has apparent authority to give consent to search. Thus, the Deputies are entitled to qualified immunity and summary judgment is granted as to the issue of Furney's apparent authority.

E.    Daleo's Objection to Search

Daleo argues that his constitutional rights were violated by the Deputies removing him from the scene in order to seek consent from Furney without him being present to object.[7] This argument fails for two reasons: (1) it is undisputed that Daleo was not removed in order to prevent him from being present to object and (2) it is not clearly established that Daleo's objection before leaving the scene prevents the Deputies from seeking consent from Furney.

In *Georgia v. Randolph*, the Supreme Court held that "a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him." 547 U.S. 103, 106 (2006). The Court further explained the bright-line rule for such cases: "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector nearby but not invited to take part in the threshold

---

[7]"The deputies knew that they would never get consent to the [sic] search the house from the Plaintiff JOSEPH DALEO. The deputies concocted this scheme to attempt to trick Shana Furney into giving consent." Dkt. 31.

colloquy, loses out." *Id.* at 121.  The Court couched this distinction in the prerequisite that there be "no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection." *Id.*

Daleo testified that he was arrested and removed from the scene prior to the Deputies performing the search, but that he objected before being taken away.  In his deposition, he testified that he told Furney "You can't - I yelled at her, 'You can't give - you can't give them permission to go into the house.  I don't want them to go into the house without a search warrant.'" Dkt. 30, 29:13-16.  Yet, the record is undisputed that Daleo was arrested for indecent exposure after he pulled his pants down and refused to cover himself up.  Besides his bare allegations, there is no evidence that his arrest for nudity was pretext to remove him from the scene to prevent him from being present to object to the search.  As such, *Randolph* is not a factually analogous case by which Daleo could show his constitutional rights were violated.

The real underlying Fourth Amendment issue at hand is whether a defendant's constitutional objection to a search has continuing validity once the defendant is absent from the residence or whether the defendant's objection may be overridden by consent from a physically-present co-occupant (assuming defendant is not removed for the express purpose of avoiding defendant's assertion of a constitutional right).  Petition for Writ of Certiorari *Fernandez v. California*, 2012 WL 8134403, at *4 (Dec. 17, 2012).  On May 20, 2013, the Supreme Court granted a petition for a writ of certiorari on this exact issue.  *Fernandez v. California*, – S.Ct. – , 2013 WL 2149804, at *1 (2013).  Petitioner in that case does not cite

an Eleventh Circuit opinion on either side of the split, and the Court likewise cannot find binding precedent on this issue.

Daleo has failed to show his objection pre-removal from the residence carries constitutional weight so that Deputies would have been given fair notice that their search was unlawful.  Accordingly, the Deputies are entitled to qualified immunity and summary judgment as to the issue of Daleo's objection pre-removal from the scene.

In sum, the Deputies are entitled to qualified immunity and summary judgment as to the issues of the voluntariness of Furney's consent to search, the apparent authority of Furney to consent, and Daleo's objection to the search pre-removal from his residence.  As to the scope of Furney's consent, the Deputies are not entitled to qualified immunity and their motion for summary judgment is denied as to that issue.

It is therefore ORDERED AND ADJUDGED that:

1.    Defendants' Motion for Summary Judgment (Dkt. 28) is granted in part and denied in part as stated herein.

**DONE** and **ORDERED** in Tampa, Florida on May 23, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2011\11-cv-2521.mtsj.frm